## No. 12,976.

## A. A. GOODWIN ET ALS. VS. J. H. MCNEELY ET ALS.

### SYLLABUS.

The plaintiffs having become adjudicatees of the interest of the deceased in a certain Spanish grant, at a succession sale, and in a few days thereafter the authors of the defendants having become adjudicatees of a certain plantation which embraced a portion of said grant, but as the property of a judgment debtor, the latter's plea of ten years prescription will be maintained and enforced as a muniment of their title, the proof disclosing that they entered into actual possession and enjoyment of a portion of the grant immediately after the sale, and in good faith maintained the same for a period of ten years prior to the institution of suit for same, and with full knowledge of the plaintiffs.

A PPEAL from the Fourth Judicial District, Parish of Grant—Machen, J.

*Robert P. Hunter* for Plaintiffs, Appellants.

*William C. Roberts* for Defendants, Appellees.

The opinion of the court was delivered by

WATKINS, J.   This is a petitory action instituted by Allen A. Goodwin and Howard G. Goodwin, claiming ownership of two undivided thirds of a certain tract of land—each as the owner of one-third—against John H. McNeely, and certain other persons as his supposed tenants; and the prayer of their petition is, that they be decreed to be the owners of same, and put in possession, and that John H. McNeely be condemned to pay them two-thirds of five hundred dollars per annum for the use and occupancy of said lands from the 1st of January, 1884.

On the trial, there was judgment rejecting the plaintiffs' demands; and further particularly decreeing that J. H. McNeely is the owner of two undivided third interests, and Ross Bailey McNeely one undivided one-third interest in the land in controversy.  It further specially decreed, that "the line marked V. X. Y. Z., on the map marked defendant " X., on file in this cause, is the line of division between the land of the " plaintiffs and the land of the defendants, J. H. McNeely and Ross " B. McNeely—the land of the defendants being that in controversy in " this case lying above said line, and that of the plaintiffs lying below " said line."

From that judgment the plaintiffs have prosecuted a devolutive appeal, after having sought in vain to obtain a new trial.

Plaintiffs allege themselves to be the owners of two-thirds undivided interest in the land in dispute, and that the remaining one-third interest therein belongs to Mrs. Elizabeth McKnight, a resident of the parish of Grant, who refuses to join them in prosecuting this suit.

The land claimed is thus described, viz:

" That certain tract, piece, or parcel of land together with all the " buildings and improvements thereon, situated in township six (6) " North, of range three (3) West, in the land district north of Red " river, containing two hundred (200) acres more or less, lying and " being in the northeastern portion of Spanish section eighteen " (18), otherwise known as the Louis Charles DeBlanc Spanish " Grant, bounded as follows, viz:

" On the West, or fronting towards Red river, by lands in same " Spanish section eighteen (18) now claimed by Mrs. Elizabeth " McKnight, and minors Lesage, George H. McKnight and Levin " Smith; South by lands formerly belonging to the Citizens' Bank, " and now to Dean Hickman and others; East by lands of the es-

"tate of Ludlow McNeely; and north by lands of McNeely and
" McKnight—being situated about four miles below the town of
" Colfax, &c."

Petitioners allege. that they purchased said land with others "in
" Spanish section eighteen, constituting the entire interest of the suc-
" cession of Meredith Calhoun in said Spanish section eighteen at his
" succession sale made in pursuance of an order of the probate court to
" pay debts, on the 2nd of December, 1882, as will be shown by the
" *proces verbal* of said sale, and the deed of sale from Howard Mc-
" Knight, administrator, * * * which is duly of record in the book
" of conveyance records of the parish of Grant," etc.

They allege that they subsequently sold an undivided one-third in-
terest in said land to Robert S. Cameron, by deed of record, and that
same was subsequently conveyed to Mrs. Elizabeth McKnight.

The plaintiffs' petition contains the following important and ma-
terial averment, viz:

" That at the time of said sale and until recently, they were induced
" to believe, by false and fraudulent representations made to them, that
" the interest of Meredith Calhoun in the said Louis Charles DeBlanc
" Spanish Grant consisted of two hundred and fifty acres only, and
" that the two hundred acres now sued for, belonged, originally, to Mrs.
" Mary Smith Calhoun, and not to Meredith Calhoun; and that it has
" been sold to Cameron and McNeely at the sale under execution in the
" suit of L. L. Levy vs. Mrs. M. M. Ada Lane, and had been acquired
" by them in the partition suit with Mrs. Lane; and by Ludlow Mc-
" Neely in the partition suit between himself and R. S. Cameron, and
" by John H. McNeely under the will of Ludlow McNeely."

It further avers " that in fact, neither Judge Smith, nor Mrs. Mary
" Smith Calhoun, ever owned any part of the Louis Charles DeBlanc
" Spanish Grant, or of section eighteen in that grant; but that the
" *whole* of same did in fact belong to Meredith Calhoun, and to his suc-
" cession, and to petitioners by their purchase at his succession sale."

It further represents " that any and all presumed acknowledgment
" or recognition of any title in the said Cameron and McNeely, Ludlow
" McNeely, or John H. McNeely, in any partition proceedings, be-
" tween them, and in any sales and conveyances referring to boundar-
" ies, or stating quantities; and, particularly, any and all acts of the
" petitioner, H. G. Goodwin, as one of the experts in making the parti-

" tion between Mrs. M. M. Ada Lane, and Cameron & McNeely; and in
" any and all acts, or the recitals of either or both of them in the act of
" partition between themselves, and Mrs. Elizabeth McKnight, who had
" acquired the one-third interest of R. S. Cameron, * * *; and in
" sales by petitioner, Allen A. Goodwin to G. H. McKnight, and Levin
" Smith * *. * *were made in ignorance of their rights in the prem-
" ises—the said Cameron, Ludlow McNeely, George H. McKnight, and
" John H. McKnight being well aware at the time that the land now
" in controversy belonged to petitioners by reason of their said purchase
" at the said succession sale," etc.

The petition then alleges that the defendants have been and are now
" in possession of said lands in bad faith and without right."

It further alleges, that the various parties above enumerated, are
inter-related with each other, and with George H. McKnight, the parish
surveyor of Grant parish, and that they all " conspired together for the
" purpose of claiming the two hundred acres of land and improvements
" now sued for, without (possessing) any right, title, or just claim
" thereto, and to defeat the just and lawful claims of petitioners."

It further alleges " that the said parties last named well knew that
" they had no title to said land, and they should not be allowed to profit
" by any presumed acknowledgment of recitals of the acts above re-
" cited, and which were made by petitioners in error and in ignorance of
" their rights in the premises; nor to have any advantage growing out
" of the lapse of time or otherwise," etc.

On the exception of the defendant as to a misjoinder of parties de-
fendant, the minor Ross Bailey McNeely was made a party by citation
to his natural tutrix; and, also, J. H. McNeely in his capacity of execu-
tor of L. McNeely, deceased.

The answer of all the defendants making common cause, is prefaced
by a plea of estoppel against the claims of the plaintiffs, based upon the
following grounds, viz:

(1) That on or about the 1st of October, 1884, at the instance of R.
S. Cameron and H. G. Goodwin, the surveyor of Grant parish " in order
" to re-establish the line running in an eastern and western direction
" through what is known as the Louis Charles DeBlanc Spanish Grant,
" and which divided that portion of the said Spanish grant then owned
" by L. H. McNeely and R. S. Cameron from that portion then owned
" by Goodwin and Goodwin (plaintiffs herein) and R. S. Cameron,

" made a survey thereof and established, or run out said line, as will " appear by his map and certificate thereof." "That the said line sep- " arating the grant into parts as above designated, was well understood " by said H. G. Goodwin, who participated in said survey and marking " of corners thereof, as shown by said map," etc.

(2) That on the 15th of December, 1889, in an act of exchange be- tween Mrs. E. McKnight and the plaintiffs, passed before a notary, they recognized the aforesaid line, and thus ratified the same.

(3) That on the 30th of December, 1889, A. A. Goodwin, one of the plaintiffs, in an authentic act of sale to G. H. McKnight, again recog- nized said line and ratified the aforesaid division.

(4) That on or about the 12th of January, 1883, the plaintiff, H. G. Goodwin, under appointment of the court, "acted as an expert in cer- " tain partition proceedings between R. S. Cameron and L. McNeely " and Mrs. M. M. Ada Lane, being in suit No. ——, R. S. Cameron et " al. vs. Mrs. M. M. Ada Lane, and Husband et al.; and that in said " proceedings, the said line is recognized, whereby said Goodwin be- " came well aware of the said line of division."

In their answer, the defendants substantially state, that it is not true, as plaintiffs allege, that they own any part of said land; and, admitting the kinship alleged to exist between the parties named, they deny the charges made of collusion, fraud and false representations between the defendants or any of the parties named.

The defendants deny that they owe any rent, being possessors in good faith; and they plead the prescription of three years against the plain- tiffs' demand for same.

They further plead, in bar of plaintiffs' suit and demands, and in support of their own titles, the prescription of ten and thirty years.

They, also, make claim for improvements to the value of fifteen hun- dred dollars, in case of eviction.

They pray that the plaintiffs' demands be rejected, and that H. H. McNeely be recognized and decreed the owner of two-thirds, and Ross Bailey McNeely of one-third of the property in dispute, and to be quieted in their possession.

The following extract from the brief of the defendants' counsel will materially aid in disclosing the chain of title under which they claim ownership of the land as having been derived from William Smith, who acquired same in 1836 from Apollonair Baillio, viz:

" That Appolonair Baillio sold the said land together with other " lands to William Smith in the year 1836; that William Smith died " about 1840, and the property passed to his grand-daughter, Mary " Smith Taylor Calhoun, who was his sole heir. That the said Mary " Smith Calhoun died about 1870, and the property passed to her sole " heirs by inheritance, W. S. Calhoun and Mrs. M. M. Ada Calhoun " Lane; that in the suit styled L. L. Levy vs. M. M. Ada Lane *et al.* " and W. S. Calhoun, at sheriff's sale, R. S. Cameron and Ludlow Mc- " Neely bought the undivided interest of W. S. Calhoun, as heir to the " estate of his mother, Mary Smith Calhoun, which sale occurred on " Dec. 16, 1882; that in a partition suit between R. S. Cameron and " Ludlow McNeely and the said Mrs. Lane, on the docket of your Hon- " orable Court, the property in controversy fell to the share of R. S. " Cameron and Ludlow McNeely, plaintiffs therein, which partition was " made in the year 1883; and in a conventional partition between the " said Cameron and the said Ludlow McNeely made about December, " 1887, the property in controversy fell to the share of Ludlow Mc- " Neely; and that the property passed from the said Ludlow McNeely, " who died in April, 1893, to J. H. McNeely, as universal legatee; but " in the suit, M. L. McNeely, Tutrix, vs. J. H. McNeely, Executor, Ross " Bailey McNeely was decreed to be the forced heir of Ludlow Mc- " Neely, deceased, and as such, entitled to an undivided one-third inter- " est in his succession—thus giving him an undivided one-third interest " in the land in controversy."

The plaintiffs became the adjudicatees of certain property claimed to be that involved in this suit, at a probate sale made in the succession of Meredith Calhoun, on the 2nd of December, 1882, and a *proces verbal* was executed in conformity therewith, and same was duly recorded—it having been sold upon twelve months' credit, and a twelve months' bond executed by the purchasers.

At an execution sale made on December 16th, 1882, under a judgment in the suit of L. L. Levy vs. M. M. Ada Lane and Wm. S. Calhoun, the undivided one-half interest of the last named defendant in several plantations, was adjudicated to R. S. Cameron and Ludlow McNeely, as the interest of said defendant, W. S. Calhoun, as an heir of the estate of Mary Smith Calhoun, the deceased wife of Meredith Calhoun, deceased—the deceased Mary Smith Calhoun having been the sole heir of her pre-deceased father, Judge William Smith.

It is upon these two adjudications that the respective pretensions of the plaintiffs and the defendants are founded—the plaintiffs claiming under Meredith Calhoun, the husband, and the defendants claiming under Mary Smith Calhoun, the wife.

Both of these adjudications are of contemporaneous dates—that of Cameron and McNeely only being two weeks later in date than that to plaintiffs.

The *process verbal* of sale to plaintiffs purported to convey "all the " interest of Meredith Calhoun in and to that portion of the Louis " Charles DeBlanc Spanish claim lying in Grant parish, or Spanish " section 18, in township 6, of range 3, west."

The *proces verbal* of the sheriff's adjudication to Cameron and McNeely purported to convey the interest of Wm. S. Calhoun in the Smithfield and Mirabeau plantations—the two having a continuous front on Red river of six miles—and the Ferenzie plantation immediately in the rear of the former, and the Meredith plantation in the rear of the latter; and, also, the uncleared lands adjoining same in the rear.

The theory of the defendants is, that Appolinair Baillio sold these lands to Judge William Smith in 1836, and that at his death in 1840, same were inherited by his granddaughter, Mary Smith, who was the wife of Meredith Calhoun.

That at her death in 1870, same were inherited by M. M. A. Lane and William S. Calhoun jointly as her sole heirs; and that Cameron and McNeely purchased the undivided half interest of Wm. S. Calhoun and subsequently acquired the half interest of Mrs. Lane in a judicial partition, in 1883.

The solution of the question of title depends, therefore, upon whether the property in dispute was owned by Meredith Calhoun, or by Mary Smith Calhoun, his wife.

From one of the maps that are in evidence it appears, that the division line designated as V. X. Y. Z. made by the parish surveyor, extends diagonally across Spanish section eighteen (18) from northeast to southwest.

Another map which was made by the Surveyor General of Louisiana, on April 30th, 1849, shows that the entire Louis Charles DeBlanc claim, as it was made under an order of survey, on May 30th, 1811, extends across Red river in a direction a little north of east; and that

the portion south and west of the river contains 1354 acres while that portion north and east of the river contains only 574 acres.

The description of the latter portion—and with a part of which only we have to deal—as indicated on the last named map, is as follows, viz:

"Sec. 18, L. C. DeBlanc, 574.04 acres," etc.

The defendants seem to concede to the plaintiffs the ownership of the two hundred and seventy-four (274) acres on the side next to Red river, and hence this controversy relates exclusively to the two hundred (200) acres on the east side—the two portions being divided by the line V. Y. X. Z.

Having thus outlined the respective contentions of the parties·· and defined clearly the *locus in quo,* we will take up the issues involved and dispose of them.

The defendants' pleas of estoppel and prescription must be first considered and determined, for if they, or either of them, should be sustained, this court will, in all likelihood, be relieved from prosecuting an inquiry into the cause upon its merits.

And, inasmuch as the pleas of ten and thirty years prescription are urged as muniments of the defendants' title, we take them to be of an importance ranking that of the pleas of estoppel and will dispose of them first.

The statement of defendants' answer, in so far as it relates to the prescription of ten years,.may be briefly stated as follows, to-wit:

That, at the date of his purchase in 1836, Judge William Smith entered into actual possession and occupancy of the aforesaid plantations including the lands in controversy, and retained the same to the time of his death in 1840; and that his successors in title held like possession as owners ever since, openly, publicly, continuously and uninterruptedly, until the date this suit was brought, June 15th, 1897.

That the property in controversy is in a cleared field, and in actual cultivation, and has been for more than thirty years.

That they have enjoyed quiet, peaceable and .uninterrupted possession under titles that are translative of property, and in legal good faith, for a period of more than ten years prior to the institution of this suit; and thereupon they plead the prescription of ten years as a muniment of title to the property in dispute.

The evidence shows that R. S. Cameron and Ludlow McNeely ac-

quired ·an undivided one-half interest in the Smithfield and Mirabeau plantations fronting on. Red river, and the Ferenzie and Meredith plantations situated immediately in their rear, without any description in the *proces verbal* of sale, of the land in suit; yet plaintiffs' counsel admits in this brief, that the contention of the defendants is, that it is embraced in and forms a part of the Mirabeau plantation, and that, as such, they acquired same at that sale.

Counsel of plaintiffs makes the further admission in his brief "that " the description in the act of partition (of January 12th, 1883,) between " Mrs. Lane, and Cameron and McNeely under which the defendants " are now claiming, is as follows, viz: Two hundred (200) acres in the " northeastern portion of section 18, known as the DeBlanc Spanish " grant, as shown by the map filed therewith."

Upon comparison made between the aforesaid description, and the allegations of the plaintiffs' petition, and the recitals of the adjudication to them at probate sale on December 2nd, 1882, it appears that the two are almost identical.

Hence, the act of partition of January 12th, 1883, became completely identified with the *proces verbal* of adjudication to Cameron and McNeely of December 16th, 1882—there being scarcely an interval of one month between them.

As a further evidence of this identity, the fact may be cited that H. G. Goodwin, one of the plaintiffs, as an expert designated by the court, signed that act of partition.

A like description is contained in the act of voluntary partition of December 5th, 1887, between Ludlow McNeely and R. S. Cameron, whereby said land fell to the share of the former.

Hence, there is no question of the fact, that the title of Cameron and McNeely calls for the land in dispute.

R. S. Cameron, being shown the map X. in evidence, states that the survey indicated thereby, was made by the parish surveyor, on the 1st of December, 1884—that is to say, a few moments subsequent to the partition—at the mutual request of H. G. Goodwin, one of the plaintiffs, and himself, "in order to locate and establish the boundary line between land belonging to Ludlow McNeely and (himself) on the one part, and the lands belonging to Goodwin and Goodwin and (himself) on the other part;" and he indicated upon the map the line V. X. Y. Z. that is recognized by the judgment of the court *a qua*.

That H. G. Goodwin was present and participated in making the survey, and at that time knew of the existence of that map.

That at the time "there was not any difficulty or dispute about the boundary line;" but that the "survey was made for the purpose of avoiding any dispute, or misunderstanding as to where that line is. * * * Everybody concerned therein was perfectly satisfied with the line so far as he knew. There was no dispute about the boundary. It was surveyed in order that they might know where the line was on the ground."

He states further that "the line V. X. Y. Z. is a part of the boundary, of the southern boundary, of the estate that was partitioned," in January, 1883.

That the H. G. Goodwin who participated in making the said survey, as the same H. G. Goodwin who acted as an expert in making said partition.

That for several years after the date of the purchase of the plaintiffs at Meredith Calhoun's succession sale on December 2nd, 1882, of a portion of the DeBlanc Spanish grant, he (witness) managed their land for them; that is, during the years 1883, 1884 and 1885—having charge of their property and collecting rents for them.

That he was in charge of the property of Cameron and McNeely for several years, and until the partition between them was effected in December, 1887.

That the part of the land which was bought by the plaintiffs, was sold to them on twelve months' credit, and they sold him an undivided one-third interest therein before making any payment thereon; that he undertook the management of the property and the payment of the bond. That H. G. Goodwin and he, together, paid the purchase price when it fell due, which was about $1,026.00.

"That A. H. Goodwin did not pay a cent on the land, but he and " H. G. Goodwin paid the whole of it out of the rents, etc."

J. H. McKnight, as a witness, says, he is the parish surveyor who established the line V. X. Y. Z. and that same is identical with the line of division which is described by several old colored men who belonged to Judge William Smith in his lifetime, as being indicated by a fence that had existed for a great many years as the limit of his possessions.

That some of the witnesses had pointed out to him the place where the fence once stood, and he pointed out the same place on the map X.

and stated that the land east and north of that line was in cultivation at the time of the survey.

R. S. Cameron testifies that he and Ludlow McNeely jointly owned the lands in controversy—the same that are described by McKnight— at one time, and that they peaceably occupied and held undisturbed possession of same in the capacity of owners; and that their predecessors in title had always theretofore held like peaceable and undisturbed possession of same from the dates when the patents issued to the date of their occupancy. States that he had known the property for more than twenty years prior to the partition in January, 1883, and that, during that period of time the heirs of William Smith had possession thereof.

That at the date of the sheriff's adjudication to Cameron and McNeely, on December 16th, 1882, Wm. S. Calhoun was in possession thereof as the heir of his mother, Mary Smith Calhoun.

Other witnesses state that the land in dispute had been handled and controlled by Ludlow McNeely and R. S. Cameron ever since they purchased in 1882; and that same has continuously remained in the control and under the management of Cameron and McNeely to the present time—and of their successors in title.

J. H. McNeely makes a similar statement and describes, in a circumstantial manner, the character and quality of the improvements that have been constructed and erected upon the property during the period of the defendant's possession under their titles.

H. G. Goodwin testifies, that at the time he acted as an expert in making the partition of January, 1883, he did not know that any portion of the DeBlanc Spanish grant was, in any way, involved therein.

That upon his subsequently being so informed, he and his brother went to see Cameron about it for the purpose of ascertaining the particular land that he and Ludlow McNeely claimed. He then states that plat X. explains the whole matter. That Mr. Cameron always insisted "that he had a title to the Louis Charles DeBlanc claim; to that portion " of the northeastern part of the section in dispute. That Cameron told " him that he would get his patent and prove it to us (plaintiff)—show " us where it was and why he claimed it."

This is a fair analysis of the testimony in regard to the actual occupancy and possession of the land in controversy by Cameron and McNeely, and their successors in title since the 16th of December,

1882, as owners, under titles translative of property. The testimony which is related herein is entirely uncontradicted and undisputed. The statement of the plaintiff H. G. Goodwin is an admission of full knowledge of the claim of Cameron and McNeely, and of their entire good faith in all these transactions.

The participation of H. G. Goodwin in the partition between Cameron and McNeely on the one part, and Mrs. Lane on the other part, in which the land in dispute was accurately described, and within a few weeks subsequent to the purchase made by his brother and himself, has particular significance in view of his statement under oath, that he had always known that Cameron had insisted that he had a title to the portion of the Louis Charles DeBlanc Spanish grant in suit.

The evidence has fully developed that plaintiffs have occupied, for more than fifteen years, the portion of said grant which adjoins that in controversy, and used and cultivated it as their own; and that the defendants and their vendors have, during the same period of time, used, occupied and cultivated the land in dispute without question or objection on the part of the plaintiffs, until this suit was filed.

It is, therefore, manifest that the plaintiffs' right of action for the recovery of same is barred by the prescription of ten years and that they cannot now be heard in a court of justice to gainsay or dispute the validity of defendants' title.

In our opinion, the proof established the actual possession of the defendants as owners in good faith, under titles translative of property, and for more than ten consecutive years prior to the institution of this suit. It further shows, that their possession commenced in good faith, as it appears that, at the date of the sheriff's adjudication to Cameron and McNeely, on December 16th, 1882, the property adjudicated was in the actual possession of William Smith Calhoun as an heir of his mother, Mary Smith Calhoun; and that it had been, theretofore, in the actual possession of his ancestors for many years previous.

Entertaining this view of the defendants' plea of prescription, it must be sustained and enforced as a muniment of title; and it will, therefore, be unnecessary to consider the defendants' plea of estoppel. We will, consequently, pretermit any discussion of the merits of the controversy.

In reaching this conclusion, we think it proper to observe that the

plaintiffs' charges of fraud, collusion and conspiracy on the part of the defendants and their vendors, were not sustained by proof.

Whilst we have found no occasion to examine and pass upon the question of title, as the judge *a quo* did, we think the maintenance of the defendants' plea of ten years' prescription as a muniment of title, is equivalent to an affirmance of his judgment.

Judgment affirmed.

This case having been submitted previous to the date of his appointment, MR. JUSTICE MONROE takes no part in this decision.

Rehearing refused.